Elizabeth A. Sperling – State Bar No. 231474
esperling@glaserweil.com
Michael F. Gosling – State Bar No. 305845
mgosling@glaserweil.com
GLASER WEIL FINK HOWARD
  JORDAN & SHAPIRO LLP
600 West Broadway, Suite 2850
San Diego CA, 92101
Telephone: (619) 765-4380

Attorneys for Plaintiff
Caydon San Diego Property LLC

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Caydon San Diego Property LLC,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Joseph Russo; Emma Alexander,<br><br>　　　　Defendants. | Case No.: **'25CV0519 MMA AHG**<br><br>**COMPLAINT FOR**<br><br>**(1) BREACH OF FIDUCIARY DUTIES**<br><br>**(2) NEGLIGENCE**<br><br>**(3) BREACH OF CONTRACT**<br><br>**(4) CONTRIBUTION AND INDEMNITY** |

Plaintiff Caydon San Diego Property LLC ("Caydon") brings this Complaint against Defendants Joseph Russo ("Russo") and Emma Alexander ("Alexander") (collectively, "Defendants") and alleges and avers the following:

## INTRODUCTION

1. This case concerns numerous and substantial acts of negligence, ultra vires acts of self-dealing, and breaches of fiduciary duties by former officers and directors of Caydon.

2. Although they owed fiduciary duties to Caydon, Russo and Alexander took actions in their own interest, not Caydon's, and misrepresented and failed to disclose to Caydon, its financiers, its shareholders, and its Receivers the true nature and extent of their severe mismanagement and negligent decision-making, which resulted in Caydon and ultimately its financiers and shareholders sustaining material financial losses and damages.

3. Russo negligently caused Caydon to purchase the California Theatre property in downtown San Diego, a property that had been abandoned and in a horribly dilapidated and allegedly dangerous state for over 30 years. He failed to disclose the full extent of the many liabilities associated with that property to Caydon, its financiers, its shareholders, and its Receivers, which further contributed to Caydon's financial losses as well as the ultimate insolvency of the wider Caydon group of companies.

4. All told, Defendants' actions have caused Caydon significant reputational harm and millions of dollars in damages.

## PARTIES

5. Plaintiff Caydon is a Delaware Limited Liability Company with its principal place of business in Houston, Texas.

6. Defendant Joseph Russo is an Australian citizen, living, residing, and domiciled in Australia. At all relevant times, Russo was an officer and/or director of Caydon, owed fiduciary duties to Caydon, and participated in the acts and omissions giving rise to this Complaint.

7. Defendant Emma Alexander is an Australian citizen, living, residing, and domiciled in Australia. At all relevant times, Alexander was an officer and/or director of Caydon, owed fiduciary duties to Caydon, and participated in the acts and omissions giving rise to this Complaint.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the action is between a citizen of the United States of America and citizens of a foreign country and the matter in controversy exceeds $75,000, exclusive of interest and costs.

9. This Court has personal jurisdiction over Defendants because Defendants have purposefully availed themselves of the privilege and benefits of conducting business in California and have sufficient minimum contacts with California that give rise to this Complaint. The actions and conduct that are the subject of this Complaint were engaged in by Defendants within California.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts and omissions giving rise to the claims occurred in San Diego County, within this judicial district.

## FACTUAL ALLEGATIONS

**Defendants Cause The Caydon Group's Collapse**

11. Russo is the founder and former Chief Executive Officer of the Caydon group of companies, which includes Caydon San Diego Property LLC. He was the Chief Executive Officer of Caydon until July 25, 2022.

12. As the managing member and Chief Executive Officer, Russo owed fiduciary duties to Caydon, including duties of loyalty, due care, and good faith.

13. Alexander was appointed by Russo to the position of Chief Operating Officer. As an officer and director of Caydon, Alexander owed fiduciary duties to Caydon, including duties of loyalty, due care, and good faith.

14. Defendants violated their fiduciary duties and obligations to Caydon, its

financiers, its Receivers, and its shareholders by failing to disclose at various times numerous significant, material issues related to the California Theatre property.

15. Because of Defendants' mismanagement, poor and negligent decision-making, bad investments and real estate purchases, and breaches of their fiduciary duties as alleged and detailed herein, and as discovery will further reveal, the wider Caydon group of companies collapsed under a mountain of debt owed to its financiers.

16. As a result, in or around July 2022, liquidators were appointed and the financiers appointed Receivers in Australia who assumed control of the Caydon group of companies.

17. Since the Receivers' appointment, Defendants continuously concealed and failed to disclose their numerous ultra vires acts of self-dealing as well as the true nature and full extent of their negligent use of Caydon's funds involving at least the California Theatre property (and likely another property located in California).

**The California Theatre Property in San Diego, California**

18. On or about December 13, 2019, Russo caused Caydon to purchase the California Theatre Property (the "Property") in San Diego, California.

19. The Property had been abandoned for over 30 years at the time Russo caused Caydon to purchase it. It had been the subject of litigation by various parties, including criminal prosecution actions by the City of San Diego against the prior owners for public nuisance. Indeed, at the time of Caydon's purchase, the Property was already embroiled in litigation brought by Save Our Heritage Organisation ("SOHO"), a local organization that sought to prevent the prior developers and owners of the Property from demolishing the Property because of its historic nature.

20. The extent of many of these and other material facts were never disclosed by Defendants to Caydon, its financiers, its shareholders, or its Receivers.

21. Defendants' failure to disclose, and to conceal, the true nature and full extent of the decrepit and dangerous conditions at the Property has spawned major

litigation and other serious issues that Caydon has been forced to respond to and resolve.

22. As one example, on April 27, 2023, after months of pre-litigation demands and requirements imposed on Caydon, the City of San Diego ("City") and People of the State of California filed a criminal prosecution complaint against Caydon, Matthew Hutton, as receiver and manager of the wider Caydon group of companies, and other Caydon group entities, charging them with creating and maintaining a public nuisance and violating numerous provisions of the San Diego Municipal Code. *See* San Diego Superior Court Case Nos. 37-2023-00017820-CU-MC-CTL and 37-2023-00024446-CU-MC-CTL.

23. The City has been aggressively pursuing and litigating the case for two years now, including filing numerous ex parte applications, an emergency Application for a Temporary Restraining Order, and a Motion for Preliminary Injunction in order to compel Caydon to immediately demolish the Property because of the dangerous condition of the property. The City is also seeking more than $1,000,000 in damages, civil penalties, and investigative costs based on the alleged violations of the Municipal Code and the alleged public nuisance that the Property poses.

24. Starting in 2022, the City began making demands on Caydon regarding the Property that stem directly from Defendants' material concealment and omissions and breaches of their fiduciary duties, including but not limited to the following:

(a) <u>Fencing</u>: The City demanded that Caydon place a fence around the Property to keep out trespassers and squatters and specified where to place it. Caydon has incurred over $35,000 in costs to erect and maintain the fence surrounding the Property at the City's various directions.

(b) <u>Public Right-of-Way Permit and Traffic Control Permit</u>: The City required Caydon to apply for and obtain these permits at a cost of around $5,000.

(c) <u>Pedestrian barricaded walkway</u>: The City required Caydon to erect a metal-framed pedestrian barricaded walkway around the Property. Caydon has

had to hire numerous contractors in connection with this project. The total cost will exceed $130,000.

(d) <u>Removing Trespassers</u>: In 2022, the City complained there was a large homeless population living in and around the Property. Caydon agreed this was dangerous and contracted with Blackwater Public Safety, a team of highly-trained security officers using state-of-the-art equipment, to remove the trespassers from the abandoned buildings. Working with various City services, such as homeless outreach, SDPD, and SDFD, Blackwater went to the Property three days in a row in early November 2022 to remove all trespassers. This operation cost nearly $35,000.

(e) <u>Boarding/Securing the Property</u>: Once the Property was cleared, another vendor was engaged to board up, secure, lock, and fence off the Property to prevent anyone from re-entering any of the buildings. This cost approximately $60,000. Caydon continues to monitor the Property, maintains the boarding, and regularly repairs and replaces items as needed at additional cost.

(f) <u>Fire Knox Box</u>: After the Property was cleared, Caydon worked with the Fire Marshal to comply with SDFD requirements, including installing a Knox box with keys for fire department access.

(g) <u>Security Patrol and Fire Watch</u>: Caydon has maintained a 24 hours a day, 7 days a week fire watch and security patrol since October 2022. Initially Caydon was required to have four security guards on patrol 24/7. Caydon has subsequently reduced the requirement to one guard who patrols the Property 24/7. Caydon pays United Guard Services about $20,000 per month for this service, which in total has cost well in excess of $500,000.

(h) <u>Pest Control</u>: In 2023, the City complained of a rodent issue, so Caydon immediately took steps to hire Truly Nolen to address the rodent problem. These services have cost over $3,000 and Caydon continues to pay this monthly.

(i) <u>Cleaning Trash and Graffiti</u>: Caydon has had to hire a vendor to clean the

Property and the immediate surrounding area. Caydon has spent more than $700 to clean the Property as well as the City's littered streets and sidewalks surrounding it. Whenever new graffiti appears on the Property, Caydon also takes steps to have it removed at further expense.

(j) <u>Demolition</u>: The City is demanding that Caydon immediately apply for and obtain demolition permits and then immediately proceed to demolish the Property. Demolition costs would exceed $7 million dollars to complete over more than an 18-month time frame.

(k) <u>Legal Fees and Other Professionals' Fees</u>: Caydon has had to hire lawyers, engineers, real estate professionals, consultants, architects, engineers, and vendors at the cost of many hundreds of thousands of dollars simply to manage the Property, to handle the litigation, and to respond to the City's many demands and requirements for the Property.

(l) <u>Other litigation and claims</u>: Caydon has also spent additional hundreds of thousands of dollars defending, responding to, and settling claims and lawsuits brought by various contractors who claimed to have performed work for Caydon on the Property and were not paid. Two of those contractors recorded mechanic's liens and judgment liens against the Property, which have required extensive legal action. One matter is still in litigation after more than two years and has cost hundreds of thousands of dollars in legal fees to defend.

25. The dilapidated state of the Property, actions taken by SOHO, the City's lawsuit, other litigation against Caydon, and the liens recorded against the Property have prevented Caydon from selling the Property. Indeed, the Property is worth substantially less than what Caydon, at Russo and Alexander's control and direction, overpaid for it in 2019. Despite Caydon's best efforts to market and sell the property since 2022, it has had no success to date and the Property will ultimately sell, if at all, for a loss.

26. At no time did Defendants disclose to Caydon, its financiers, its shareholders, and its Receivers the extent of the above-described material issues involving the Property.

27. Defendants' negligence and failure to disclose the full material extent of Caydon's excessive risk exposure and cost associated with the Property have resulted in substantial material financial loss to Caydon and its investors in a sum well in excess of $2,000,000.

28. Defendants' negligence and other improprieties have also caused irreversible reputational harm and loss to Caydon as a result of the negative media exposure, liens recorded against the Property, involvement in the City's prosecution action, and highly negative associations with the Property.

## FIRST CLAIM FOR RELIEF

(Breach of Fiduciary Duties Against All Defendants)

29. Caydon incorporates by reference each of the preceding paragraphs as though fully set forth herein.

30. Defendants were officers and directors of Caydon. As such, they owed fiduciary duties to Caydon, its financiers, its shareholders, and its Receivers.

31. As described above, Defendants breached their fiduciary duties by failing to exercise reasonable care and diligence in making decisions that impacted Caydon, its financiers, its shareholders, and its Receivers, as well as by failing to disclose material facts, engaging in ultra vires acts of self-dealing, committing corporate waste, and causing Caydon and its financiers to suffer massive financial harm.

32. Caydon has suffered substantial, irreversible financial and reputational harm as a direct and proximate result of Defendants' actions.

33. Caydon seeks and is entitled to recover compensatory damages, disgorgement, an accounting, punitive and exemplary damages, attorneys' fees, and other legal and equitable relief.

## SECOND CLAIM FOR RELIEF

(Negligence Against All Defendants)

34. Caydon incorporates by reference each of the preceding paragraphs as though fully set forth herein.

35. Defendants owed a duty of care to Caydon, its financiers, its shareholders, and its Receivers and breached their duty by failing to disclose, concealing, and misrepresenting critical information and key material facts that they were duty-bound to disclose to Caydon, its financiers, its shareholders, and its Receivers, and by engaging in the other tortious acts set forth herein.

36. Defendants failed to act with the reasonable degree of prudence and judgment of a Chief Executive Officer and Chief Operating Officer of a similarly situated company. Discovery will reveal further acts of negligence by Defendants.

37. Defendants' conduct as described herein was a substantial factor and proximately caused harm to Caydon, its financiers, its shareholders, and its Receivers.

38. As a direct and proximate result of Defendants' negligence, Caydon has been damaged and continues to suffer damages in an amount to be proven at trial.

39. As a result of Defendants' negligence, Caydon seeks and is entitled to recover compensatory damages, disgorgement, an accounting, punitive and exemplary damages, interest, and other legal and equitable relief.

## THIRD CLAIM FOR RELIEF

(Breach of Contract Against Russo)

40. Caydon incorporates by reference each of the preceding paragraphs as though fully set forth herein.

41. Russo and Caydon were parties to written agreements governing Russo's conduct with respect to Caydon, its financiers, its shareholders, and its Receivers.

42. Caydon fully performed all obligations on its agreements.

43. Russo breached these agreements by, among other actions, failing to act in Caydon's best interests and by engaging in the wrongful acts set forth herein.

Discovery will reveal further acts of wrongdoing by Russo.

44. As a direct and proximate result of Russo's breaches of his contractual obligations, Caydon has been damaged and continues to suffer damages in an amount to be proven at trial.

45. Caydon seeks and is entitled to recover compensatory damages, disgorgement, an accounting, attorneys' fees, interest, and other legal and equitable relief.

## FOURTH CLAIM FOR RELIEF

(Contribution and Indemnity Against All Defendants)

46. Caydon incorporates by reference each of the preceding paragraphs as though fully set forth herein.

47. Caydon has incurred significant attorneys' fees, costs, and other losses as a result of Defendants' conduct alleged herein related to the Property, among many other things.

48. Caydon, its financiers, its shareholders, and its Receivers have incurred extraordinary expense managing Caydon's assets, including the Property, and responding to the myriad of claims, litigation, legal issues, and massive financial implications of Defendants' wrongful acts, including those concerning the Property.

49. Caydon has incurred hundreds of thousands of dollars in legal fees defending against the City's lawsuit regarding the Property, other litigation and legal claims brought by contractors for Caydon on the Property.

50. Defendants are legally responsible, whether equitably or by contract, for Caydon's fees, costs, and losses related to the Property.

51. Defendants owe Caydon contractual or equitable indemnity for its costs and losses related to the Property.

52. Defendants owe Caydon equitable contribution for its costs and losses related to the Property.

**PRAYER FOR RELIEF**

WHEREFORE, Caydon prays for judgment against Defendants as follows:

1. For general, compensatory, and special damages according to proof but in the minimum sum of $2,000,000;
2. Punitive and exemplary damages in an amount sufficient to punish Defendants and deter future misconduct;
3. An accounting and disgorgement of all funds;
4. Attorneys' fees and costs of suit incurred herein;
5. Pre- and post-judgment interest;
6. Such other and further relief as the Court deems just and proper.

DATED: March 5, 2025

GLASER WEIL FINK HOWARD
JORDAN & SHAPIRO LLP

By: /s/ Elizabeth A. Sperling
Elizabeth A. Sperling
Michael F. Gosling
Attorneys for Plaintiff
Caydon San Diego Property LLC

**DEMAND FOR JURY TRIAL**

Caydon demands a jury trial on all claims for relief and issues triable to a jury.

DATED: March 5, 2025

GLASER WEIL FINK HOWARD JORDAN & SHAPIRO LLP

By: /s/ Elizabeth A. Sperling
    Elizabeth A. Sperling
    Michael F. Gosling
    Attorneys for Plaintiff
    Caydon San Diego Property LLC